## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
-----------------------------x
COURTNEY C. LITOWITZ,          :
                               :
            Plaintiff,         :
                               :
v.                             :    Civil No. 3:20-cv-724(AWT)
                               :
MERRICK B. GARLAND, IN HIS     :
OFFICIAL CAPACITY AS THE       :
ATTORNEY GENERAL OF THE        :
UNITED STATES,                 :
                               :
            Defendant.         :
-----------------------------x
```

### RULING ON MOTION TO DISMISS

The plaintiff, Courtney C. Litowitz ("Litowitz"), brings a one-count complaint alleging discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(d)(4)(A), as made applicable to the Rehabilitation Act, 29 U.S.C. §§ 791 and 794. The defendant, the Attorney General of the United States in his official capacity, has moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) or, in the alternative, Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the defendant's motion to dismiss is being granted in part and denied in part.

1

I.    **FACTUAL ALLEGATIONS**

For the purposes of this motion, the court takes the following factual allegations set forth in the complaint as true.

Since on or about April 6, 2003, the plaintiff has been employed by the Federal Bureau of Investigation ("FBI") as a Victim Specialist. Within the United States Department of Justice, the FBI is responsible to the Attorney General of the United States. Since 2014, the plaintiff has been assigned to the New Haven Field Office. As a Victim Specialist, the plaintiff works directly with FBI Special Agents to ensure that victims of crimes investigated by the FBI are afforded their rights and are connected to necessary support, services, and resources. The plaintiff provides written and oral information to victims about their rights and available services, keeps victims informed about case status, provides on-scene assistance to victims, and creates and maintains an appropriate space within the FBI office for victims.

The Assessment and Therapeutic Intervention Program ("ATIP") is a psychological fitness for duty examination composed of a questionnaire and a psychological assessment. The ATIP is administered by a third-party contractor, Modern Psych Network.

In 2019, the FBI required Victim Specialists to complete the ATIP questionnaire and then undergo a psychological assessment. The purpose of requiring Victim Specialists to participate in the ATIP was to uncover mental health disabilities and psychological impairments from which a Victim Specialist may be suffering, and the finding could result in alterations to conditions of employment or removal from the Victim Specialist position.

On October 19, 2018, Assistant Director of the Victim Services Division Kathryn M. Turman introduced the ATIP through a division newsletter. On November 23, 2018, Unit Chief Pamela S. Elton notified all Victim Services Division personnel that they must complete the ATIP as an annual performance assessment review objective, beginning in Fiscal Year 2019. On March 13, 2019, Turman officially announced the initiation of the ATIP.

On March 27, 2019, the plaintiff filed a complaint with the Office of Integrity and Compliance ("OIC") about the implementation of the ATIP.

In April 2019, the plaintiff asked OIC if she could delay participating in the ATIP while her complaint was being investigated. OIC advised the plaintiff that because the matter was still being reviewed, she should contact the Victim Services Division for guidance. Since Victim Services Division leadership

had repeatedly stated that the ATIP was mandatory, the plaintiff completed phase one of the ATIP, i.e. the questionnaire, on June 8, 2019.

On June 19, 2019, during a telemedicine conference with the ATIP psychologist, the plaintiff was required to sign a waiver which stated that she was voluntarily completing the ATIP assessment and acknowledging the fact that the ATIP psychologist was not bound by doctor-patient confidentiality. The plaintiff informed the ATIP psychologist that she was not comfortable signing the waiver because the assessment was not voluntary; rather she had to complete it if she wanted to keep her job. The session was discontinued without the plaintiff signing the waiver in order to provide time to seek clarification.

In a series of email communications with the ATIP administrators and Victim Services Division leadership, the plaintiff was told that the ATIP was mandatory. Victim Services Division leadership indicated that the plaintiff's failure to participate in the ATIP would lead to her being removed from her role as a Victim Specialist.

Under threat of losing her employment, the plaintiff completed the ATIP psychological assessment on June 27, 2019. The psychologist performing the ATIP assessment told the plaintiff that "being a member of the LGBTQ community is a 'red

flag' as she would have a higher rate of suicide." (Compl., ECF
No. 1, ¶ 38.) The psychologist also "indicated to the plaintiff
that depending on the plaintiff's response, how often one was
intimate with self or partner and how often one received
massages could likewise be a 'red flag.'" (Compl., ¶ 39.) The
psychologist "implied that the plaintiff's answer to whether she
was religious was inadequate, questioning the plaintiff if she
was 'at least spiritual' and to explain her answer." (Compl., ¶
41.)

The plaintiff was informed that she would be required to
complete the ATIP annually as a condition of her employment and
that after the first two years, the Victim Services Division and
the ATIP administrators would assess whether the plaintiff would
be required to complete the ATIP annually or every other year.

On August 8, 2019, the plaintiff commenced the Equal
Employment Opportunity ("EEO") process for her claim that her
rights under the Rehabilitation Act had been violated. On
September 6, 2019, an EEO Counselor issued a "NORTF," a notice
of right to file a formal EEO complaint, to the plaintiff. On
September 19, 2019, the plaintiff filed a discrimination
complaint with the Office of Equal Employment Opportunity
Affairs ("OEEOA") alleging that she was the subject of unlawful
disability discrimination because she had been required to take

the ATIP, a psychological fitness for duty examination that was neither job-related nor a business necessity, as a condition of her continued employment. On December 19, 2019, the OEEOA advised the plaintiff that it had accepted for investigation the following issue: "Whether complainant was discriminated against based on disability (mental) when: 1) On June 8, 2019, she was required to complete the Assessment and Therapeutic Intervention Program (ATIP) questionnaire[, and] 2) On June 27, 2019, she was required to complete the ATIP psychological assessment." (Compl., ¶ 4(d).) On March 4, 2020, the OEEOA completed its investigation into the plaintiff's complaint. On March 11, 2020, the plaintiff elected to have a final decision on her complaint made by the Department of Justice. On May 14, 2020, the Department of Justice informed the plaintiff that it had received her case and that a final decision would be rendered as soon as possible. More than 180 days have expired since the plaintiff filed her complaint with the OEEOA and the Department of Justice has not rendered a final decision on the plaintiff's complaint.

## II.  LEGAL STANDARD

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to

6

adjudicate it[.]'" Cortlandt St. Recovery Corp. v. Hellas
Telecomm., 790 F.3d 411, 416-17 (2d Cir. 2015) (quoting Makarova
v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). The party
asserting subject matter jurisdiction "bears the burden of
proving subject matter jurisdiction by a preponderance of the
evidence." Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d
635, 638 (2d Cir. 2005). When reviewing a motion to dismiss for
lack of subject matter jurisdiction, the court "may refer to
evidence outside the pleadings." Makarova, 201 F.3d at 113. In
fact, "the court may resolve disputed jurisdictional fact issues
by reference to evidence outside the pleadings, such as
affidavits." Antares Aircraft, L.P. v. Fed. Republic of Nigeria,
948 F.2d 90, 96 (2d Cir. 1991).

"[T]he standards for reviewing dismissals granted under
12(b)(1) and 12(b)(6) are identical." Moore v. PaineWebber,
Inc., 189 F.3d 165, 169 n.3 (2d Cir. 1999). When deciding a
motion to dismiss under Rule 12(b)(6), "the allegations of the
complaint should be construed favorably to the pleader." Scheuer
v. Rhodes, 416 U.S. 232, 236 (1974). Although a complaint "does
not need detailed factual allegations, . . . a plaintiff's
obligation to provide the 'grounds' of his 'entitlement to
relief' requires more than labels and conclusions, and a
formulaic recitation of the elements of a cause of action will
not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555

(2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact) . . . ." Twombly, 550 U.S. at 555 (internal citations omitted). However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Mytych v. May Dep't Stores Co., 34 F. Supp. 2d 130, 131 (D. Conn. 1999) (quoting Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984)). "The issue [on a motion to dismiss] is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 236).

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the

pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken . . . ." <u>Samuels v. Air Transp. Local 504</u>, 992 F.2d 12, 15 (2d Cir. 1993). "[I]n some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss. A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" <u>Goel v. Bunge, Ltd.</u>, 820 F.3d 554, 559 (2d Cir. 2016) (quoting <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002)).

## III. DISCUSSION

The defendant argues that the plaintiff's claim is moot, but the court concludes that it is not. The defendant maintains that the plaintiff lacks standing; the court concludes that the plaintiff's claims for declaratory and injunctive relief must be dismissed because she lacks standing as to those claims for relief but that she has standing with respect to her claims for relief in the form of monetary damages. Finally, the court finds unpersuasive the defendant's argument that the complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### A. Rule 12(b)(1)

#### 1. Mootness

"Article III of the Constitution grants the Judicial Branch authority to adjudicate 'Cases' and 'Controversies.'" Already, LLC v. Nike, Inc., 568 U.S. 85, 90 (2013). "A case becomes moot -- and therefore no longer a 'Case' or 'Controversy' for purposes of Article III -- when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Id. at 91 (some internal quotation marks omitted). However, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued. Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." Id. (internal citations omitted). "[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." Mhany Mgmt., Inc. v. Cty. of Nassau, 819 F.3d 581, 603 (2d Cir. 2016)(quoting City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982)). "The voluntary cessation of allegedly illegal activities will usually render a case moot if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2)

10

interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Id. (quoting Granite State Outdoor Advert., Inc. v. Town of Orange, 303 F.3d 450, 451 (2d Cir. 2002)).

"'A defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.' Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 190 (2000). This is both a stringent, City of Mesquite, 455 U.S. at 289 n.10, and a formidable burden, Laidlaw, 528 U.S. at 190." Id. at 603–04. "Although we recognize that when 'the defendant is a government entity, some deference must be accorded to a legislative body's representations that certain conduct has been discontinued,' some deference does not equal unquestioned acceptance." Id. at 604 (quoting Lamar Advert. of Penn, LLC v. Town of Orchard Park, 356 F.3d 365, 376 (2d Cir. 2004)).

"[The] mootness doctrine counsels suspicion in situations in which a defendant deprives a plaintiff of her stake in the litigation. For instance, when a plaintiff seeks an injunction, a defendant who voluntarily ceases the challenged behavior calls into question whether there is any way to redress the injury alleged." Klein on behalf of Qlik Techs., Inc. v. Qlik Techs.,

11

Inc., 906 F.3d 215, 224 (2d Cir. 2018); see Mhany Mgmt., 819
F.3d at 604 (declining to find that the defendant's actions
rendered the case moot in light of "suspicious timing" of
changed circumstances that "appear to track the development of
this litigation").

Furthermore, "a disclaimer of intention to revive allegedly
unlawful conduct does not suffice by itself to meet [the] heavy
burden in order to render the case moot." R.C. Bigelow, Inc. v.
Unilever, 867 F.2d 102, 106 (2d Cir. 1989). "When abandonment of
challenged conduct seems timed to head off an adverse
determination on the merits—-particularly when supported by
narrowly drawn affidavits containing disclaimers only of present
intention to resume allegedly unlawful activity—-it cannot be
said that the possibility of repetition of such activity is
merely abstractly conceivable." Id. at 106-07. See also
Connecticut Citizens Def. League, Inc. v. Lamont, 465 F. Supp.
3d 56, 69 (D. Conn. 2020)("for example, the fact that a
municipality has enacted a 'repeal of the objectionable
language' of an ordinance has been found not to moot a case
where it 'would not preclude the municipality from reenacting
precisely the same provision if the District Court's judgment
were vacated.'" (quoting Mhany Mgmt., 819 F.3d at 604)); Rosa v.
600 Broadway Partners, LLC, 175 F. Supp. 3d 191, 201 (S.D.N.Y.
2016)("In ADA cases involving architectural barriers remedied by

structural changes, some courts have found that the conduct reasonably would not recur because the defendants would have no reason to alter the structural changes back. Such cases can be contrasted with those where ADA non-compliance flows from an easily changeable policy."(internal citations and quotation marks omitted)).

The defendant argues that the FBI's voluntary cessation of the administration of the ATIP moots this case. However, to meet the formidable burden of showing that it is absolutely clear that the ATIP will not be reinstated on mandatory basis and that the FBI is committed to this course permanently, the defendant relies on the affidavit of Kimberly Poyer, Section Chief for the Victim Services Division. That affidavit states that "As of July 20, 2020, the FBI is no longer administrating the ATIP" and that "In the event that the FBI reinstates the ATIP in the future, the ATIP will be voluntary and not mandatory." (Declaration of Kimberly L. Poyer (the "Poyer Affidavit"), ECF No. 17, ¶¶ 6-7). While some deference may be accorded to the Poyer Affidavit because it is a representation made on behalf of a government entity, several factors "counsel[] suspicion" with respect to the disclaimer of an intention to reinstate a mandatory ATIP. <u>Klein</u>, 906 F.3d at 224.

First, "[t]he FBI rescinded its policy regarding ATIP since the filing of this case." (Def.'s Mem., ECF No. 16, at 15[1].) The complaint was filed in May 2020, and the FBI ceased administering the ATIP in July 2020. The timing appears to track the development of this litigation and raises a question about whether the rescission of the policy was timed to head off an adverse determination on the merits.

Second, inconsistent messages from Victim Services Division leadership make it difficult to conclude that there is no reasonable expectation that the allegedly wrongful behavior will recur in the future. While the plaintiff was required to sign a waiver stating that her completion of the ATIP assessment was voluntary, Victim Services Division leadership "notified all VS personnel that they must complete ATIP as an annual performance assessment review ("PAR") objective," Compl., ¶ 20, and "repeatedly stated that the ATIP was mandatory," Compl., ¶ 28. Also, in a Victim Services Division newsletter distributed on July 24, 2020, a message from the Assistant Director of the Victim Services Division, Regina E. Thompson states that "We have completed the first year of the [ATIP] program and are now pausing to evaluate, and determine the future of the program. During this time, the ATIP evaluations will be suspended."

---

[1] Pincites for court filings refer to the page number assigned by the electronic docket, not the page number assigned by the filer.

(Pl.'s Opp., Ex. 1, ECF No. 20, at 36.) This message references only a suspension of the mandatory ATIP and, unlike the Poyer Affidavit, contains no disclaimer of an intention to reinstate a mandatory ATIP -- rather it reflects a pause for the purpose of evaluating and determining the future of the program. See Trinity Lutheran Church of Columbia, Inc. v. Comer, --- U.S. ----, 137 S. Ct. 2012, 2019 n.1 (2017) (The governor's announcement that "he had directed the Department to begin allowing religious organizations to compete for and receive Department grants on the same terms as secular organizations" did not moot the action absent assurance that the Department "could not revert to its policy of excluding religious organizations."). Thus, it is not clear that reinstatement on a "voluntary" basis in the future, as represented in the Poyer Affidavit, would truly be voluntary.

Finally, the Victim Services Division's cessation of a mandatory ATIP is not irrevocable. If the court were to dismiss the plaintiff's claim as moot, nothing would prevent the Victim Services Division from reverting to its former policy. It is noteworthy that both the Poyer Affidavit and Thompson's newsletter message emphasize the benefits of the ATIP. The Poyer Affidavit states that the VSD is "committed to a comprehensive approach to wellness and resilience for employees – including Victim Service Professionals and Victim Specialists . . . . A key component of this strategy initially involved regular

15

psychological assessment with access to therapeutic
intervention. This assessment, called [the ATIP], was a
significant part of the Victim Service Division wellness and
resilience strategy." (Poyer Affidavit, ¶¶ 3-4.) Thompson's
newsletter message states that "[the ATIP] . . . was developed
to support the well-being of our workforce . . . . VSD has
received great feedback from many of you regarding the ATIP, and
we are using that feedback to inform and shape the program. We
will continue to work with the Victim Service Provider Wellness
and Resilience (VSPWR) work group to incorporate your insights
and ideas on how ATIP can best provide support to victim service
providers and professionals as we all work to build resilience
and maintain wellness." (Pl.'s Opp. at 36.) The fact that the
ATIP was a significant part of the wellness and resilience
strategy for the Victim Services Division and a key component of
its strategy suggests not only that the leadership has a strong
desire to continue the program but also that it sees value in a
mandatory ATIP. This does not suggest that the Victim Services
Division will not resume administering a mandatory ATIP if this
case is dismissed. See Parents Involved in Community Schools v.
Seattle School Dist. No. 1, 551 U.S. 701, 719 (2007)(The
defendant's voluntary cessation failed to moot the case when the
defendant "vigorously defends the constitutionality of its race-
based program, and nowhere suggests that if this litigation is

16

resolved in its favor it will not resume using race to assign students.").

Therefore, the court finds that the case is not moot because the defendant has not shown that it is absolutely clear that the ATIP will not be reinstated on a mandatory basis in the future, nor that events have completely and irrevocably eradicated the effects of the alleged violation.

### 2. Standing

"'Standing to sue is a doctrine' that 'limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong.'" Liberian Cmty. Ass'n of Connecticut, 970 F.3d 174, 183-84 (2d Cir. 2020)(quoting Spokeo, Inc. v. Robins, --- U.S. ----, 136 S. Ct. 1540, 1547 (2016)). "[T]here are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness." Laidlaw, 528 U.S. at 190. "[T]he irreducible constitutional minimum of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, 136 S. Ct. at 1547 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). "[T]he

injury in fact must have been concrete and particularized as well as actual or imminent, not conjectural or hypothetical." Liberian Cmty. Ass'n of Connecticut, 970 F.3d at 184 (quoting Lujan, 504 U.S. at 560).

"'Concrete' is not, however, necessarily synonymous with 'tangible.' . . . [The Supreme Court has] confirmed in many of [its] previous cases that intangible injuries can nevertheless be concrete." Spokeo, 136 S.Ct. at 1549. "[E]motional or psychological harms also suffice for standing purposes." Denney v. Deutsche Bank AG, 443 F.3d 253, 265 (2d Cir. 2006). The Second Circuit has "repeatedly described [the injury in fact] requirement as a low threshold, which helps to ensure that the plaintiff has a personal stake in the outcome of the controversy." John v. Whole Foods Mkt. Grp., Inc., 858 F.3d 732, 736 (2d Cir. 2017)(internal citations and quotation marks omitted).

"The legally protected interest 'may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.' Warth v. Seldin, 422 U.S. 490, 500 (1975). Accordingly, 'standing is gauged by the specific common-law, statutory or constitutional claims that a party presents.' Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund, 500 U.S. 72, 77 (1991)." Fulton v. Goord, 591 F.3d 37, 41 (2d Cir. 2009).

"We evaluate Plaintiffs' standing as of the outset of the litigation." Mhany Mgmt., Inc. v. Cty. of Nassau, 819 F.3d 581, 600 (2d Cir. 2016)(internal quotation marks omitted). "Each element of standing must be supported with the manner and degree of evidence required at the successive stages of the litigation, and at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." John, 858 F.3d at 736 (quoting Lujan, 504 U.S. at 561). "Because standing is challenged on the basis of the pleadings, we accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Fulton, 591 F.3d at 41 (internal quotation marks omitted).

"[A] plaintiff must demonstrate standing separately for each form of relief sought." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006) (quoting Laidlaw, 528 U.S. at 185). Here, the plaintiff seeks declaratory and injunctive relief, as well as monetary damages, and she must demonstrate standing as to each.

### a. Declaratory and Injunctive Relief

"While past injury [may] suppl[y] a predicate for compensatory damages, it [does] not, according to the [Supreme] Court, supply one for prospective equitable relief since the fact that such practices had been used in the past [does] not

19

translate into a real and immediate threat of future injury . . . .” <u>Shain v. Ellison</u>, 356 F.3d 211, 215 (2d Cir. 2004)(citing <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 105-06 (1983)). “Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects.” <u>Lyons</u>, 461 U.S. at 102. “Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects.” <u>Id.</u> at 102 (internal quotation marks omitted). “Allegations of possible future injury do not satisfy the requirements of Article III. Rather, there must be a substantial risk that harm will occur.” <u>Liberian Cmty. Ass'n of Connecticut</u>, 970 F.3d at 184 (quoting <u>Whitmore v. Arkansas</u>, 495 U.S. 149, 158 (1990)).

The plaintiff alleges that “[t]he discriminatory actions of the defendant caused, continues to cause and will cause the plaintiff to suffer mental anguish, loss of enjoyment of life and other non-pecuniary losses.” (Compl., ¶ 97.) She requests that the court “declare the conduct engaged [in] by the defendant to be in violation of the plaintiff's rights” and “enjoin the defendant from engaging in such conduct.” (Compl., Section VII.) She argues that her “claim of emotional stress satisfies her minimal burden of alleging an injury in fact to give her standing to contest the violation of Title 42 U.S.C. S

20

12112(d)(4)(A)." (Pl.'s Opp. at 23.) However, without more, her past injury does not translate into a substantial risk of future injury.

Therefore, the defendant's motion to dismiss for lack of standing is being granted with respect to the plaintiff's prayers for declaratory and injunctive relief.

### b. Monetary Damages

The plaintiff seeks and award of "compensatory damages," as well as an award of "punitive damages." (Compl., Section VII.) "[P]ast injury [may] suppl[y] a predicate for compensatory damages." Shain, 356 F.3d at 215. The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). This general prohibition against discrimination includes "medical examinations and inquiries." 42 U.S.C. § 12112(d)(1). But under this particular provision "[a] covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent

with business necessity." 42 U.S.C. § 12112(d)(4)(A). The

implementing regulations state: "Examination or inquiry of

employees. Except as permitted by § 1630.14, it is unlawful for

a covered entity to require a medical examination of an employee

or to make inquiries as to whether an employee is an individual

with a disability or as to the nature or severity of such

disability." 29 C.F.R. § 1630.13(b). This section of the ADA is

made applicable to the plaintiff as an employee of the FBI

through the Rehabilitation Act, 29 U.S.C. §§ 791 and 794.

Thus, for claims made pursuant to this section of the ADA:

> [A] plaintiff need not prove that he or she has a
> disability unknown to his or her employer in order to
> challenge a medical inquiry or examination under 42 U.S.C.
> § 12112(d)(4)([A]). In contrast to other parts of the ADA,
> the statutory language does not refer to qualified
> individuals with disabilities, but instead merely to
> "employees." 42 U.S.C. § 12112(d)(4)(A). Moreover, we agree
> with the Tenth Circuit that "it makes little sense to
> require an employee to demonstrate that he has a disability
> to prevent his employer from inquiring as to whether or not
> he has a disability." Roe v. Cheyenne Mountain Conference
> Resort, Inc., 124 F.3d 1221, 1229 (10th Cir. 1997). We also
> note that EEOC enforcement guidance supports this
> interpretation. See Enforcement Guidance on Disability-
> Related Inquiries and Medical Examinations of Employees
> Under the Americans with Disabilities Act (ADA), (EEOC,
> July 27, 2000), available at http://www.eeoc.gov/
> docs/guidance-inquiries.html ("This statutory language
> makes clear that the ADA's restrictions on inquiries and
> examinations apply to all employees, not just those with
> disabilities.").

Conroy v. New York State Dep't of Corr. Servs., 333 F.3d 88, 94-

95 (2d Cir. 2003). Also, in Fulton v. Goord, the court stated:

> [W]e have held that ADA and Rehabilitation Act actions are
> not subject to any of the prudential limitations on
> standing that apply in other contexts. <u>See</u> <u>Innovative</u>
> <u>Health Sys., Inc. v. City of White Plains</u>, 117 F.3d 37, 47
> (2d Cir. 1997) (concluding that standing under these
> statutes should be defined as broadly as constitutionally
> permitted), overruled on other grounds by <u>Zervos v. Verizon</u>
> <u>N.Y., Inc.</u>, 252 F.3d 163, 171 n.7 (2d Cir. 2001). The ADA
> and Rehabilitation Act generously confer the right to be
> free from disability-based discrimination by public
> entities and federally funded programs and, in so doing,
> confer standing for persons claiming such discrimination to
> enforce that right.

591 F.3d at 42.

"The ADA provides 'remedies, procedures, and rights . . . to any person alleging discrimination on the basis of disability in violation of section 12132,' 42 U.S.C. § 12133, and the Rehabilitation Act does the same for 'any person aggrieved' by disability-based discrimination, 29 U.S.C. § 794a(a)(2)." <u>Fulton</u>, 591 F.3d at 42. The enforcement provision for 29 U.S.C. § 791 states, "The remedies, procedures, and rights . . . shall be available, with respect to any complaint under  section 791 of this title, to <u>any employee or applicant for employment</u> <u>aggrieved</u> by the final disposition of such complaint, or by the failure to take final action on such complaint." 29 U.S.C. § 794a(a)(1)(emphasis added). The enforcement provision for 29 U.S.C. § 794 states, "The remedies, procedures, and rights . . . shall be available to <u>any person aggrieved</u> by any act or failure to act by any recipient of Federal assistance or Federal

provider of such assistance under section 794 of this title." 29
U.S.C. § 794a(a)(2)(emphasis added).

The plaintiff alleges that she has suffered emotional
distress, which constitutes an injury in fact, as a result of an
inquiry prohibited by the ADA and the Rehabilitation Act. This
is a sufficient predicate for compensatory damages and
sufficient to confer standing to enforce the plaintiff's rights
under 29 U.S.C. §§ 791 and 794 to be free from disability-based
discrimination.

Therefore, the defendant's motion to dismiss for lack of
standing is being denied with respect to the plaintiff's prayer
for relief in the form of compensatory and other monetary
damages.

### B. Rule 12(b)(6)

The defendant argues that the complaint should be dismissed
for failure to state a claim because it "does not allege that
Plaintiff is disabled" and because "Plaintiff's claim fails to
allege any adverse employment action." (Def.'s Mem. at 19-20);
see Def.'s Reply at 8 ("Plaintiff does not allege that her
participation in the ATIP led to any adverse employment
injury.") However, a medical examination or inquiry is
prohibited unless it is job-related and consistent with business
necessity, and the complaint alleges that "[t]he ATIP program is

24

not job related and is not justified by the defendant's business necessity." [2] (Compl., ¶ 46.)

The plaintiff here need not allege a disability or an adverse employment action to state a claim for violation of 42 U.S.C. § 12112(d)(4)(A). The defendant argues that "To state a claim of disparate treatment discrimination under the Rehabilitation Act, Plaintiff must plead that '(1) plaintiff's employer is subject to the [Rehabilitation Act]; (2) plaintiff was disabled within the meaning of the [Rehabilitation Act]; (3) plaintiff was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of her disability.' Quadir v. New York State Dep't of Labor, 39 F. Supp. 3d 528, 540 (S.D.N.Y. 2014) (citing Jacques v. DiMarzio, Inc., 386 F.3d 192, 198 (2d Cir. 2004))." (Def.'s Mem. at 19.) However, the defendant is relying on the elements for

---

[2] The ADA permits covered entities to conduct an "examination or inquiry [that] is shown to be job-related and consistent with business necessity," "conduct voluntary medical examinations," and "make inquiries into the ability of an employee to perform job-related functions." 42 U.S.C. §§ 12112(d)(4)(A), 12112(d)(4)(B). The associated regulation allows "a medical examination (and/or inquiry) of an employee that is job-related and consistent with business necessity. A covered entity may make inquiries into the ability of an employee to perform job-related functions." 29 C.F.R. § 1630.14(c). "[I]n proving a business necessity, . . . the employer must first show that the asserted 'business necessity' is vital to the business. . . . The employer must also show that the examination or inquiry genuinely serves the asserted business necessity and that the request is no broader or more intrusive than necessary." Conroy, 333 F.3d at 97-98.

stating a claim of disparate treatment discrimination, not the elements to plead a stand alone claim of a 42 U.S.C. § 12112(d)(4)(A) violation. A plaintiff asserting a claim under § 12112(d)(4)(A) "must show (1) that he is an employee of the defendant-employer, and (2) that the defendant-employer required him to undergo a medical examination or made a disability-related inquiry of him." Williams v. FedEx Corp. Servs., 849 F.3d 889, 901 (10th Cir. 2017). As discussed above, "a plaintiff need not prove that he or she has a disability unknown to his or her employer in order to challenge a medical inquiry or examination under 42 U.S.C. § 12112(d)(4)([A]). In contrast to other parts of the ADA, the statutory language does not refer to qualified individuals with disabilities, but instead merely to 'employees.' 42 U.S.C. § 12112(d)(4)([A])." Conroy, 333 F.3d at 94-95. Nor do the elements of a claim under § 12112(d)(4)(A), as articulated in Williams, require that the plaintiff here allege that she suffered any adverse employment action. See also Katz v. Adecco USA, Inc., 845 F.Supp.2d 539, 545 (S.D.N.Y. 2012)("Plaintiff need not provide evidence of any adverse employment action as a result of the inquiry on the application form.").

    The complaint alleges that the plaintiff was required "to complete the ATIP questionnaire, and then undergo a psychological assessment," Compl., ¶ 17, that the "questions

raised in the [ATIP] assessment were discriminatory, and intimidating," id. at ¶ 37, and that she "has suffered emotional distress because of the defendant's discriminatory conduct," id. at ¶ 47. The plaintiff's allegations are sufficient to state a claim upon which relief can be granted pursuant to 29 U.S.C. §§ 791 and 794 for a violation of 42 U.S.C. § 12112(d)(4)(A).

Therefore, the motion to dismiss pursuant to Rule 12(b)(6) is being denied.

IV. **CONCLUSION**

For the reasons set forth above, the defendant's Motion to Dismiss (ECF No. 15) is hereby GRANTED in part and DENIED in part. Only the prayers for declaratory and injunctive relief are dismissed.

It is so ordered.

Signed this 19th day of August 2021, at Hartford, Connecticut.

/s/ AWT

Alvin W. Thompson
United States District Judge
